IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

TAMMY BAZIL                                             PLAINTIFF

V.                              NO. 13-2148

CAROLYN W. COLVIN,
Acting Commissioner of the Social Security Administration          DEFENDANT

### MEMORANDUM OPINION

Plaintiff, Tammy Bazil, brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial

review of a decision of the Commissioner of the Social Security Administration (Commissioner)

denying her claim for a period of disability and disability insurance benefits (DIB) and

supplemental security income (SSI) under the provisions of Titles II and XVI of the Social

Security Act (Act). In this judicial review, the Court must determine whether there is substantial

evidence in the administrative record to support the Commissioner's decision. See 42 U.S.C. §

405(g).

I.      **Procedural Background:**

Plaintiff protectively filed her current applications for DIB and SSI on May 4, 2011,

alleging an inability to work since January 1, 2001, due to back pain, osteoarthritis, bipolar

disorder and depression. (Tr. 120-127, 148, 151). An administrative hearing was held on June

18, 2012, at which Plaintiff appeared with counsel and testified. (Tr. 34-58).

By written decision dated July 6, 2012, the ALJ found that Plaintiff had an impairment

or combination of impairments that were severe - mood disorder(s). (Tr. 12). However, after

reviewing all of the evidence presented, the ALJ determined that Plaintiff's impairments did not

-1-

meet or equal the level of severity of any impairment listed in the Listing of Impairments found

in Appendix I, Subpart P, Regulation No. 4. (Tr. 13).   The ALJ found Plaintiff retained the

residual functional capacity (RFC) to:

> perform a full range of work at all exertional levels but with the following
> nonexertional limitations: the claimant can perform work where
> interpersonal contact is incidental to the work performed, the complexity
> of tasks is learned and performed by rote, with few variables and where
> little judgment is required, and where the supervision required is simple,
> direct, and concrete.

(Tr. 15). With the help of the vocational expert (VE), the ALJ determined that during the relevant

time period, Plaintiff would be able to perform such jobs as food prep worker/cook helper,

maid/housekeeping/cleaner, and kitchen helper. (Tr. 20).

Plaintiff then requested a review of the hearing decision by the Appeals Council, which

denied that request on April 23, 2013. (Tr. 1-4).  Subsequently, Plaintiff filed this action. (Doc.

1). This case is before the undersigned pursuant to the consent of the parties. (Doc. 7). Both

parties have filed appeal briefs, and the case is now ready for decision. (Docs. 14, 15).

The Court has reviewed the entire transcript. The complete set of facts and arguments are

presented in the parties' briefs, and are repeated here only to the extent necessary.

## II.    Applicable Law:

This Court's role is to determine whether the Commissioner's findings are supported by

substantial evidence on the record as a whole.  Ramirez v. Barnhart, 292 F. 3d 576, 583 (8th Cir.

2002).  Substantial evidence is less than a preponderance but it is enough that a reasonable mind

would find it adequate to support the Commissioner's decision.  The ALJ's decision must be

affirmed if the record contains substantial evidence to support it.  Edwards v. Barnhart, 314 F.

3d 964, 966 (8th Cir. 2003).  As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently.  Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001).  In other words, if after reviewing the record, it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed.  Young v. Apfel, 221 F. 3d 1065, 1068 (8th Cir. 2000).

It is well established that a claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity.  Pearsall v. Massanari, 274 F. 3d 1211, 1217 (8th Cir. 2001); see also 42 U.S.C. §§423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. §§423(d)(3), 1382(3)(D). A Plaintiff must show that her disability, not simply her impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant had engaged in substantial gainful activity since filing her claim; (2) whether the claimant had a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) met or equaled an impairment in the listings; (4) whether the impairment(s) prevented the claimant from doing past relevant work; and (5) whether the claimant was able to perform other work in the national

-3-

economy given her age, education, and experience.  See 20 C.F.R. §416.920.  Only if the final

stage is reached does the fact finder consider the Plaintiff's age, education, and work experience

in light of her residual functional capacity.  See McCoy v. Schweiker, 683 F.2d 1138, 1141-42

(8th Cir. 1982);  20 C.F.R. §416.920.

## III.   Discussion:

Plaintiff raises the following arguments on appeal: 1) The ALJ erred by failing to find

other severe impairments; 2) The ALJ erred in his RFC determination and by not considering the

GAF scores; and 3) The ALJ erred in his credibility findings. (Doc. 14).

### A.   Severe Impairments:

An impairment is severe within the meaning of the regulations if it significantly limits

an individual's ability to perform basic work activities. 20 C.F.R. § § 1520(a)(4)ii),

416.920(a)(4)(ii).  An impairment or combination of impairments is not severe when medical

and other evidence establish only a slight abnormality or a combination of slight abnormalities

that would have no more than a minimal effect on an individual's ability to work.  20 C.F.R. §

§ 404.1521, 416.921.  The Supreme Court has adopted a "de minimis standard" with regard to

the severity standard.  Hudson v. Bowen, 870 F.2d 1392, 1395 (8th Cri. 1989).

Plaintiff argues that the ALJ erred by failing to find her Personality Disorder and Pain

Disorder associated with both psychological factors and general medical condition, and

osteoarthritis of the back, met the de minimis step two severity standard.

Plaintiff was seen for her mental impairments in 1998, 2001, and 2002 at the Area Mental

Health Center, during which she was seen at least one time by Dr. Andrew Lauronilia, M.D.,

Staff Psychiatrist (Tr. 363), and most of the other times she was seen by Beverly A. Shively,

-4-

M.S., LMLP, Licensed Masters Level Psychologist, and Renee E. Huddleston, MSW, LSCSWQ, CADC-II, MAC, Staff Social Worker. (Tr. 339, 340, 342, 344, 350, 356). The next medical records contained in the file, dated between June 19, 2005 and September 1, 2010, relate to Plaintiff's complaints of unrelated conditions, such as cough, rashes, hives, allergic reactions, stomach and abdominal pains, and a mammogram. (Tr. 228, 232, 242, 237, 255, 268, 281, 290, 299, 308, 317, 326).

The next time Plaintiff saw a physician with complaints relating to the alleged relevant conditions was on March 14, 2011, when Plaintiff presented herself to Sparks Regional Medical Center, complaining of left arm pain and swelling. (Tr. 226).   At that time, Plaintiff's degree of pain was reported as "moderate" and the range of motion of her arms was within normal limits. (Tr. 227).  There were no focal deficits in her motor strength, and the diagnosis was arm and neck pain. (Tr. 227).  On August 10, 2011, Dr. Chester L. Carlson conducted a General Physical Examination, where he reported that Plaintiff's range of motion was normal, except it was painful in her left shoulder. (Tr. 366, 368). Plaintiff was able to perform all limb functions, and Dr. Carlson noted there were mild arthritic changes in her lumbar spine and increased lordosis of L3-S1. (Tr. 370). Dr. Carlson diagnosed Plaintiff with low back pain secondary to osteoarthritis, but reported that no significant physical or emotional limitations were observed. (Tr. 370).  The ALJ found that Plaintiff presented no evidence of a diagnosis of back pain from an acceptable medical source to support her allegation. (Tr. 13). The Court agrees, and finds that there is substantial evidence to support the ALJ's finding that Plaintiff's back pain was not severe.

With respect to Plaintiff's mental impairments, as noted above, Plaintiff was treated for

-5-

AO72A
(Rev. 8/82)

her mental impairments in 1998, 2001, and 2002, and in her undated Disability Report - Adult, Plaintiff conceded she had not seen anyone since 2002 for her pain or depression because she did not have medical insurance. (Tr. 156). It is also noteworthy that at her visits in 2001 and 2002, it was reported that Plaintiff did not follow-up on recommendations made by the therapist, and although Plaintiff reported that she had good response with Paxil, she quit taking it since she was unemployed and she could not afford the medication. (Tr. 344, 363-364). It is also significant that in an April 1, 2002 report from the Area Mental Health Center, Plaintiff had called her physician on March 25, 2002 for samples of Paxil, but did not go in to pick them up. (Tr. 356). Clearly, Plaintiff was non-complaint with her treatment. The failure to seek medical treatment for long periods weighs against Plaintiff's claims of disabling mental symptoms. Mouser v. Astrue, 545 F.3d 634, 638 (8th Cir. 2008). In addition, Plaintiff's failure to take the medication she has been prescribed is inconsistent with a finding of disability. Wildman v. Astrue, 596 F.3d 959, 965 (8th Cir. 2010).

In a Mental Diagnostic Evaluation conducted by Kathleen M. Kralik, Ph.D., on August 22, 2011, Plaintiff reported she had back and osteoarthritis pain bipolar/depression. (Tr. 371). Plaintiff acknowledged that transportation issues were a major factor driving her social security disability application. (Tr. 371). Dr. Kralik also reported that Plaintiff was not aware of local indigent services for her depression and anxiety, and was given local referral information. (Tr. 371). Plaintiff also admitted that she currently supported herself via babysitting two of her grandchildren, three days a week, twelve hours a day. (Tr. 371). Dr. Kralik reported that Plaintiff's depression and anxiety issues had admittedly been chronic and had not precluded Plaintiff's ability to work in the past. (Tr. 371). "In fact, she admittedly felt better about herself

-6-

when she worked." (Tr. 371). At the time of the evaluation, Plaintiff was not taking any medication. (Tr. 372). Plaintiff reported smoking one pack per day - denying this negatively impacted her breathing issues in her perception because "I smoke lights." (Tr. 373). Plaintiff was estimated to function in the low average range of intelligence, and her insight seemed quite limited, as was judgment and impulse control. (Tr. 374). Dr. Kralik diagnosed Plaintiff as follows:

|        |                                                                                                                                                                                                                                                      |
|--------|--------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|
| Axis I: | Anxiety Disorder NOS<br>Depressive Disorder NOS<br>Pain Disorder Associated with both Psychological Factors and a General Medical Condition (alleged; likely of mild to moderate severity as impacting participation in gainful occupational endeavors, relative to age peers) |
| Axis II: | Personality Disorder NOS |
| Axis V: | Current GAF - 45-55<br>Highest GAF past year - 50-60<br>Typical GAF past year - 40-50 |

(Tr. 376).

Dr. Kralik concluded that Plaintiff's capacity to carry out activities of daily living and daily adaptive functioning was estimated to be mildly impaired for occupational purposes; her capacity to communicate and interact in a socially adequate manner was estimated to be moderately impaired for occupational purposes; her capacity to communicate in an intelligible and effective manner was estimated to be generally adequate for occupational purposes; her capacity to cope with the typical mental/cognitive demands of basic work-like tasks seemed mildly to moderately impaired for occupational purposes; her ability to attend and sustain concentration on basic tasks seemed mildly to moderately impaired for occupational purposes; her capacity to sustain persistence in completing tasks seemed mildly impaired for occupational

-7-

purposes; and her capacity to complete work-like tasks within an acceptable time frame seemed mildly to moderately impaired for occupational purposes. (Tr. 376-378). Dr. Kralik further concluded that malingering/exaggeration per se about the alleged mental issues was not evident; but whether her (admittedly chronic) mental conditions were genuinely the issue as impacting her participation in gainful occupational endeavors outside the home seemed "highly questionable." (Tr. 377). In Dr. Kralik's perception, even if Plaintiff's mental symptoms were assumed to be worse than what claimant described or manifested at the evaluation, there would seem to be a lack of sufficient evidence at that time regarding whether such symptoms could be managed via simple treatment interventions within her means - even as an indigent patient - to access. Dr. Kralik felt that if Plaintiff did not follow through in the next 4-6 weeks with at least attempting to seek out such treatment, she would interpret this as further support for a 'secondary gain' motive to maintaining the alleged 'symptoms' and dysfunctional dynamics. (Tr. 378).

On September 7, 2011, a Psychiatric Review Technique Report and Mental RFC Assessment were completed by non-examining consultant Sheri L. Simon, Ph.D. (Tr. 383-395, 397-399). Dr. Simon concluded that Plaintiff had a mild degree of limitation in restriction of activities of daily living; moderate degree of limitation in difficulties in maintaining social functioning and in maintaining concentration, persistence, or pace, and no episodes of decompensation. (Tr. 393). Dr. Simon also found that based on all of the available medical records, it appeared that Plaintiff was capable of performing work where interpersonal contact was incidental to work performed, e.g. assembly work; where complexity of tasks was learned and performed by rote, with few variables, little judgment, and where supervision required was simple, direct and concrete (unskilled). (Tr. 399). This opinion was affirmed by Dr. Jerry R.

-8-

Henderson, Ph.D., on October 18, 2011. (Tr. 401).

The Court finds that as noted by the ALJ, Plaintiff's allegation that her back pain and other mental disorders were severe impairments is not supported by substantial evidence. There was no evidence of a diagnosis of a back condition from an acceptable medical source to support her allegation. In addition, as suggested by Defendant, the ALJ was specific in his analysis of Plaintiff's mental impairments, and even if Plaintiff had an additional severe mental impairment, the evidence of record does not suggest additional functional limitations beyond those the ALJ specified in his RFC determination.

Based upon the foregoing, the Court finds there is substantial evidence to support the ALJ's determination of Plaintiff's severe impairments.

**B. and C.      RFC Determination and GAF Scores:**

RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1). It is assessed using all relevant evidence in the record. Id. This includes medical records, observations of treating physicians and others, and the claimant's own descriptions of her limitations. Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005); Eichelberger v. Barnhart, 390 F.3d 584, 591 (8th Cir. 2004). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace. Lewis v. Barnhart, 353 F.3d 642, 646 (8th Cir. 2003). "[T]he ALJ is [also] required to set forth specifically a claimant's

-9-

limitations and to determine how those limitations affect his RFC." Id.

As indicated earlier, there are not many medical records involved in this case, allegedly because Plaintiff was unable to afford treatment. However, there is no objective evidence that Plaintiff sought treatment at a free clinic or that she was refused treatment because of her financial condition. At the hearing, Plaintiff testified that she tried to get in "like Good Samaritan and free clinics and I was told they couldn't help me cause I wasn't at a job." (Tr. 40). However, other than this testimony, there is no indication that Plaintiff sought such treatment. Furthermore, in her August 22, 2011 evaluation, it was reported that Plaintiff was not aware of local indigent services that she could go to for her depression and anxiety, and was given local referral information. (Tr. 371). Clearly, she therefore did not seek such help between 2001 and 2011. In addition, Plaintiff was reported as smoking one pack of cigarettes per day, and could therefore, apparently afford to purchase cigarettes.

In his decision, the ALJ gave substantial weight to Plaintiff's treating physicians as well as Drs. Carlson, Kralik, and the agency consultants. (Tr. 19). The Court finds there is substantial evidence to support the ALJ's RFC determination and the weight he afforded the evidence.

With respect to the GAF scores, Plaintiff refers to Plaintiff's GAF scores of 45, given on November 1, 2001; 35 given on November 15, 2001; and 40-50 given on August 22, 2011. However, the Eighth Circuit has held that GAF scores are "not essential to the accuracy of an RFC determination, only that it may be of considerable help in formulating RFC." Earnheart v. Astrue, 484 F. Appx. 73, 75 (8th Cir. 2012); King v. Colvin, No. C13-3039-LTS, 2014 WL 1344194 at *11 (N.D.Iowa, Apr. 4, 2014).   In addition, it is noteworthy that the times Plaintiff was assessed with GAF scores of 35 and 45, she had not followed the recommendation of the

-10-

therapist or had not taken her medication, even though she had reported that she had good response to Paxil. Therefore, these scores represent "snapshots" during time periods of no medication. See Pruett v. Colvin, No. 1:13-CV-00012-BD, 2014 WL 102598 at *2 (E.D.Ark. Mar. 17, 2014).

Based upon the foregoing, the Court finds the ALJ did not err in not addressing the GAF scores.

### C.    Credibility Findings:

The ALJ was required to consider all the evidence relating to Plaintiff's subjective complaints including evidence presented by third parties that relates to: (1) Plaintiff's daily activities; (2) the duration, frequency, and intensity of her pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of her medication; and (5) functional restrictions. See Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). While an ALJ may not discount a claimant's subjective complaints solely because the medical evidence fails to support them, an ALJ may discount those complaints where inconsistencies appear in the record as a whole. Id. As the Eighth Circuit has observed, "Our touchstone is that [a claimant's] credibility is primarily a matter for the ALJ to decide." Edwards v. Barnhart, 314 F.3d 964, 966 (8th Cir. 2003).

In his decision, the ALJ found that although Plaintiff's medically determinable impairment could reasonably be expected to cause the alleged symptoms, Plaintiff's statement concerning the intensity, persistence and limiting effects of the symptoms were not credible to the extent they were inconsistent with his RFC assessment. (Tr. 18). The ALJ reported that Plaintiff's credibility was damaged by the fact that she alleged severely disabling mental health

-11-

problems, yet had neither sought nor obtained treatment specifically for mental health issues, except for a brief period in 2001 and 2002. (Tr. 18).  The ALJ also considered Plaintiff's work history in determining Plaintiff's credibility.  He noted that the record reflected work activity after the alleged onset date, which he found indicated Plaintiff's daily activities have, at least at times, been somewhat greater than Plaintiff generally reported. (Tr. 19).  The ALJ also found Plaintiff's credibility was damaged by evidence of record regarding her motives. He referenced Plaintiff's statement to Dr. Kralik that "transportation issues are a major factor" driving her application. (Tr. 19).  The ALJ found that Plaintiff had a mild restriction in her activities of daily living, noting that she was able to feed and dress herself and attend to her personal hygiene, wash dishes, prepare meals, care for family pets, do laundry, vacuum, and regularly babysit her grandchildren. (Tr. 13-14).

Based upon the foregoing, as well as those reasons given in Defendant's well-stated brief, the Court finds that there is substantial evidence to support the ALJ's credibility findings.

## IV.   Conclusion:

Accordingly, having carefully reviewed the record, the Court finds substantial evidence supporting the ALJ's decision denying the Plaintiff benefits, and thus the decision is hereby affirmed.  The Plaintiff's Complaint should be, and is hereby, dismissed with prejudice.

IT IS SO ORDERED this 12th day of May, 2014.

/s/ Erin L. Setser
HONORABLE ERIN L. SETSER
UNITED STATES MAGISTRATE JUDGE

-12-

AO72A
(Rev. 8/82)